## FLOYD v. SELLERS.

1. PRACTICE IN CIVIL ACTIONS—NEW PARTIES.

When a person not a party to a civil action, but having an interest in the subject thereof, makes application to the court to be made a party, it may order him to be brought in, and, upon service upon the adverse party of his complaint or answer, the same proceedings shall be had as if he had been an original party.

2. SAME.

An application to become a party made after defendant's default had been entered by the clerk in vacation, but as soon as court convened, is not too late.

3. SAME.

Permission to one not a party, either to intervene or defend, must come from the court.

4. REDEMPTION.

Under the statute (Gen. Stats., sec. 1851) allowing a redemption of lands from a sale under execution, a redemption may be made by a judgment debtor where the judgment was against him and another, and the land sold under an execution issued thereon as the land of both defendants, notwithstanding he may have had no interest in the property at the time of the levy or sale.

5. SAME.

Upon a redemption from a sale of real estate under execution, the certificate of sale becomes void, and a sheriff's deed issued thereon would be a nullity.

*Appeal from the District Court of Boulder County.*

Mr. J. R. ZUVER, for appellant.

Messrs. CARPENTER & McBIRD and Messrs. ADAMS & ADAMS, for appellee.

THOMSON, J., delivered the opinion of the court.

On the 16th day of January, 1892, Margaret Sargent commenced her action in the county court of Boulder county against Samuel H. Cochran and The Boston and Colorado Gold and Silver Mining Company, to recover an indebtedness owing to her by the defendants jointly. A writ of

attachment was issued in the suit, which was levied upon the title and interest of Cochran and the company in the Empress lode mining claim. Cochran was a nonresident of the state, and service of summons was had upon him by publication. The Boston and Colorado Company appeared to the action, but Cochran did not. While the cause was pending, Sargent assigned her claim to Charles O. Floyd, who was thereupon substituted as plaintiff. Judgment was rendered in Floyd's favor on the 8th day of October, 1892. It was a personal judgment against the company, and a judgment against Cochran's interest in the attached property. On the 20th day of March, 1893, execution was issued upon the judgment, by virtue of which the property was, on April 22, 1893, sold to Floyd, he being the highest and best bidder, and on the same day a certificate of purchase was executed to him by the sheriff. On the 21st day of October, 1893, Cochran paid to the sheriff the money necessary to redeem the property from the sale, and received a certificate of redemption in due form. Afterwards, on January 23, 1894, the sheriff executed a deed for the same property to Floyd, pursuant to the sale to him and his certificate of purchase.

On the 6th day of February, 1893, John A. Sellers recovered judgment in the county court of Boulder county, in an action against Cochran and the Boston and Colorado Company. The judgment was against both defendants. The suit was commenced by attachment, which was levied upon the Empress lode mining claim as their property. Execution was duly issued upon the judgment, and the attached property sold to Sellers, who received a certificate of purchase. On the 29th day of April, 1893, Elson S. Bishop recovered a judgment against Cochran and the Mining Company in the district court of Boulder county, upon which execution was duly issued and levied upon the Empress lode; and on the 28th of December following, Bishop, as judgment creditor, redeemed the property from the sale under Seller's execution, and caused it to be sold by virtue of the execution issued upon his own judgment. Bishop was the purchaser

at this sale.   He afterwards transferred his purchase to Sellers, to whom the sheriff executed a deed.

On the 2d day of February, 1891, and prior to the commencement of any of these suits, Cochran conveyed his right, title and interest in the Empress lode to the Boston and Colorado Company; and, so far as is shown by this record, he was afterwards without interest of any kind in the property.

This proceeding was instituted by Floyd against Cochran to set aside the redemption by the latter, and quiet the title vested in him by his sheriff's deed.   Cochran residing without the state, service was had upon him by publication.  Upon the expiration of the statutory time for the completion of service had in that way, Cochran having made no appearance, his default was entered by the clerk in vacation, on August 16, 1894.   On the 1st day of October, 1894, that being the first day of the next succeeding term of the court in which the cause was pending, Sellers presented a petition to the court, praying that he might be permitted to intervene, and be made a party defendant to the action, and allowed to defend the same.   Against the objection of the plaintiff, the court granted the prayer of the petition, and allowed it to be filed.   The petition which was filed was styled a "petition in intervention," but it was really an answer and cross complaint.   It contained a denial of each and every allegation of the complaint, alleged the facts showing his interest in the subject of the action, set forth the title which he had acquired by virtue of the sale under Bishop's judgment, and concluded with a prayer for a cancellation of the deed under which the plaintiff claimed, and for the quieting of his own title.   Upon the hearing the court found the issues against the plaintiff, and entered a decree dismissing his complaint, and also the cross complaint of Sellers, giving Sellers a judgment for costs.   The facts in evidence were as we have already stated them.

The assignments which require attention are, that the court erred in permitting Sellers to intervene after the de-

fault of Cochran had been entered; that the court erred in deciding that Cochran had the right to redeem the property from Floyd's sale, and that the court erred in holding that Bishop had the right to redeem the property from the sale under the judgment in favor of Sellers.

As we have already said, we do not regard the pleading filed by Sellers as properly a petition in intervention. By section 22 of the code, any person is entitled to intervene in an action who has an interest in the matter in litigation, in the success of either of the parties to the action, or an interest against both. Section 17 provides that when in a civil action a person not a party thereto, but having an interest in the subject thereof, makes application to the court to be made a party, it may order him to be brought in, and, upon due service upon the adverse party of his complaint or answer, the same proceedings shall be had as if he had been an original party to the suit. No time is fixed within which application shall be made either to intervene or become a party, but, of course, there is a period in the history of a case beyond which it will not be entertained. We think Sellers became a defendant and not an intervenor. He denied the allegations of the complaint in the form prescribed in the case of an answer, and when the court dismissed his cross complaint, what was left of his pleading was matter which is proper only in an answer. But it is not very material what technical name we give to the pleading. It was not filed too late. The default of Cochran was entered in vacation by the clerk. Permission to one not a party, either to intervene or defend, must come from the court. Sellers availed himself of the earliest possible opportunity to make his application. He acted immediately when the court convened, and before any proceedings were had, or could have been had, in the case, except the entry of the default, which he could not prevent, and by which his rights were in no wise affected.

The principal question in the case, however, concerns the right of Cochran to redeem. If he had no such right, the

sheriff's deed to Floyd was valid, and conveyed the property sold; otherwise, it was absolutely void. As a matter of fact, Cochran was not, at the time of the attempted redemption, or even at the time the suit was commenced, an owner in the property; and it is argued that for that reason he lacked a qualification essential to the right of redemption. The provisions of the statute regulating redemptions by judgment defendants are as follows:

" It shall be lawful for any defendant, his heirs, executors, administrators or grantees, whose lands or tenements shall be sold by virtue of any execution, within six months from such sale, to redeem such lands or tenements by paying to the purchaser thereof, his executors, administrators or assigns, or the sheriff or other officer who sold the same; for the benefit of such purchaser, the sum of money which may have been paid on the purchase thereof, or the amount given or bid if purchased by the plaintiff in the execution, together with the interest thereon at the rate of ten per cent from the time of such sale; and on such sum being paid as aforesaid, the said sale and the certificate thereupon granted shall be null and void." General Statutes, sec. 1851.

It is contended by the plaintiff that by virtue of the foregoing provisions, there is no right of redemption in any defendant, unless he is the actual owner of the lands or tenements sold, and that therefore Cochran's attempted redemption was abortive, and resulted in nothing. If the statute may be so construed, then it becomes the duty of the sheriff before receiving redemption money, or issuing a certificate of redemption, to assure himself that the title to the property is in the party seeking to redeem. To that end he must make examination of the records in the recorder's office; but even after so doing he might feel himself incompetent to pass upon the question of title. To fix the actual ownership might require an adjudication, and before that could be concluded the time for redemption might expire. And a party purchasing under execution issued after an apparent redemption would buy at his peril. There might, after all, be no

redemption, because it might be afterwards determined that the person redeeming was not in fact the owner of the land.

We do not find anything in the language of the statute to warrant such a construction. If the intention had been that the sheriff should conduct an investigation of title before taking redemption money, there would be somewhere some provision prescribing the manner of the investigation, or what evidence of title would be sufficient; but there is none. As the sheriff is the officer who executes the process of the court, he has nothing to guide him but the records of his own office. He has the writ by virtue of which he made the levy and sale, and if it appears from it that the land was levied upon and sold as the property of a defendant, he must regard the latter as its owner for all the purposes of the sale, and of the proceedings subsequent to the sale. The provision that any defendant whose lands or tenements shall be sold may redeem the same, was not intended to make actual ownership the test of the right of redemption. It was simply intended, where lands were levied upon and sold as the property of some one or more of the defendants, to confine the right to them, excluding other defendants or strangers, so that the sheriff, when tendered money for redemption, could immediately ascertain, by reference to his own records, whether the party offering the money was so related to the sale as to authorize him to effect the redemption.

In this case the suit was against both defendants, the land was attached as the property of both defendants, the judgment was against both defendants, and the land was sold by virtue of the execution issued upon the judgment, as the land of both defendants. By the record of the case, outside of which the statute gave the sheriff no right to look, the land sold belonged to both defendants, and might be redeemed by either, or by both together; and when the money was tendered by Cochran, the sheriff had no alternative except to receive it, and upon its payment to him the redemption was complete. This redemption was therefore properly made by Cochran; and as, by the terms of the stat-

ute, when the redemption money was paid, the sale and certificate to Floyd became null and void, the deed subsequently executed was a nullity too.

There was in evidence for Floyd the record of a suit between The Boston and Colorado Gold and Silver Mining Company as plaintiff, and one F. M. Bisbee as defendant, brought apparently for the purpose of quieting the title of the plaintiff company in a piece of land called the "Empress Mill Site," against some claim of the defendant. It was proved that Cochran paid Bisbee's attorney's fees, and the other expenses of his defense. The judgment was for the plaintiff. Some argument is made by Floyd's counsel that the result of that suit concluded Cochran in the matter of his claim of title, and that because Cochran was concluded Sellers is. We do not understand the argument, and have no suspicion of the object counsel had in introducing the record; but we may say, *first*, that the property involved in that controversy was not the property which Cochran redeemed, and which is the subject of this litigation; *second*, even if it was, Cochran could not have been more effectually concluded by the judgment than he was by the deed which, prior to that time, he executed to the Boston and Colorado Company; and, *third*, whether Cochran was concluded by either deed or judgment, was a question with which Sellers was not in the slightest degree concerned, and the determination of which could have no possible influence upon the title which he acquired.

The objection made to the redemption by Bishop from the sale under Sellers' execution does not deserve much notice. Counsel probably felt it incumbent upon him to object because Bishop's redemption was an important part of the evidence showing such interest in Sellers as entitled him to be made a party to the suit. The statute provides for the redemption of land by a judgment creditor from sale under execution, and gives him three months for that purpose after the expiration of the time within which a judgment defendant may redeem. General Statutes, sec. 1852. Bishop's

redemption appears from the record to have been conducted in strict conformity with the statute, and the objection to it is not supported by any reason which we feel called upon to discuss.

The judgment must be affirmed.

*Affirmed.*